UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT BEAMON,<br>*Plaintiff*,<br>*v.*<br>YALE NEW HAVEN HOSPITAL INC.,<br>*Defendant.* | Civil No. 3:16cv181 (JBA)<br><br>March 13, 2017 |

**RULING GRANTING DEFENDANT'S MOTION TO DISMISS COUNT FOUR**

Plaintiff Robert Beamon brought this action against Defendant Yale-New Haven Hospital, Inc. ("YNHH") alleging employment discrimination based on race in violation of Title VII of the Civil Rights Act (Count One), retaliation in violation of Title VII (Count Two), retaliation in violation of the Family Medical Leave Act (Count Three), and retaliation in violation of § 31-51a of the Connecticut General Statutes (Count Four). Defendant now moves [Doc. # 24] to dismiss Count Four. For the following reasons, Defendant's Motion is granted.

**I.    Facts Alleged**

Plaintiff alleges the following facts in his Amended Complaint [Doc. # 20]. He had been employed by Defendant since November 2011 as a surgical technician and had a productive work record through 2014. (Am. Compl. ¶¶ 5, 8.) On June 5, 2014 he assisted with a brain surgery on a seven-year-old child. (*Id.* ¶ 9.) During the procedure, Plaintiff "reached over to grab a line as part of his normal process," but was elbowed by the surgeon, Dr. Derek Steinbacher (the "Doctor"). (*Id.* ¶¶ 10, 13-14.) Plaintiff initially thought the contact was accidental, but when he "attempted to connect the line again, Dr. Steinbacher physically interfered again, but this time a bit harder." (*Id.* ¶¶ 14-15.) Finally, when Plaintiff attempted to connect the line a third time, "Dr. Steinbacher jabbed him hard in his abdomen," after which Plaintiff yelled to ask what Dr. Steinbacher thought

he was doing and requested that he not hit him again. (*Id* ¶ 19.) At that point, the Facilitating Nurse in the room "asked the Plaintiff to back away from the field [and] not to pass Dr. Steinbacher any scalpel blades" and after being relieved by another technologist, Plaintiff and the nurse left the operating room. (*Id.*)

Plaintiff reported the assault to the Charge Nurse and Department Manager, after which he met with the Medical Director of Peri-Operative Services and the Patient Services Manager for Peri-Operative Services. (*Id.* ¶¶ 11, 18-19.) He was reportedly advised that "it would be best for him to 'forget' the incident." (*Id.* ¶ 19.) At some point thereafter, Plaintiff learned that Dr. Steinbacher had "verbally assaulted" minority coworkers in the past, and that "there were concerns regarding his anger and inappropriate behavior in other contexts."[1] (*Id.*) Five days after the incident, Plaintiff "reported the patient safety issue, . . . Dr. Steinbacher's assault and the lack of response from [YNHH] up to that point" to YNHH's CEO, Vice President of Compliance, and Chief of Staff, along with Plaintiff's manager and Human Resources. (*Id.* ¶ 22.) Plaintiff's email stated: "I understand that the Hospital may lose money if a surgeon has to be put on leave or dismissed but the patients['] safety and that of employees who work at this Hospital should supersede that." (*Id.* ¶ 30.)[2]

In response to this report, Plaintiff was advised that an investigation was underway. However, Dr. Steinbacher was not placed on leave and was permitted to continue performing

---

[1] The source of plaintiff's claimed knowledge about Dr. Steinbacher is not disclosed nor is any detail given.

[2] There are several paragraphs labeled 30, 31 and 32 in Plaintiff's Complaint. In this decision, all citations to paragraphs 30 *et seq.* refer to the paragraphs in Count Four of the Complaint.

surgeries. (*Id.* ¶ 23.) "Based on the situation, [Plaintiff] consulted with his physician and was placed on a leave of absence pending the outcome of the investigation" because he "was uncomfortable participating in surgical procedures with a surgeon who was unable to physically control himself and make the patient's safety and well-being the priority." (*Id.* ¶ 24.) During his absence, Plaintiff "made multiple inquiries of the Hospital [Human Resources] department and the management team regarding the investigation," including "his concerns regarding safety of employees and patients and the assault, but was either ignored or told that the investigation was ongoing." (*Id.* ¶ 25.)

On June 17, 2014 Plaintiff suggested that his concerns were not being taken seriously because of his race (*id.* ¶ 6, 25), and on June 19 he reiterated his distress about Dr. Steinbacher's continued presence at the hospital (*id.* ¶ 30). More than a month later, on July 31, 2014, Defendant terminated Plaintiff's employment because he supposedly had not completed the paperwork required to take a leave of absence. (*Id.* ¶ 26-27.) Although Plaintiff explained "that he still needed information from his employer to complete the FMLA paperwork and that he was simply following the directions that Defendant's FMLA administrators had provided him," his request for reconsideration was denied. (*Id.* ¶ 27.)

## II.    Discussion[3]

---

[3] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Conclusory allegations are not sufficient. *Id.* at 678–79; *see also* Fed. R. Civ. P. 12(b)(6).

3

## A.  Connecticut General Statutes Section 31-51q

In Count Four, Plaintiff alleges that "Defendant's conduct in subjecting Plaintiff to discipline and discharge constitutes a violation of § 31-51q of the Connecticut General Statutes."[4] (Am. Compl. ¶ 34.) Section 31-51q extends the protections of the First Amendment to private sector employees and imposes liability on private employers, in addition to government employers. *See Schumann v. Dianon Sys., Inc.,* 304 Conn. 585, 599 (2012).[5] In order to benefit from protection of the statute, an employee's expression must have been both on a matter of public concern and motivated by a desire to speak out as a citizen. *Cotto v. United Technologies Corp.,* 251 Conn. 1, 17 (1999).

 "An employee's speech addresses a matter of public concern when the speech can 'be fairly considered as relating to any matter of political, social or other concern to the community.'"

---

[4] The statute reads in full:

Any employer, including the state and any instrumentality or political subdivision thereof, who subjects any employee to discipline or discharge on account of the exercise by such employee of rights guaranteed by the first amendment to the United States Constitution or section 3, 4 or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer, shall be liable to such employee for damages caused by such discipline or discharge, including punitive damages, and for reasonable attorney's fees as part of the costs of any such action for damages. If the court determines that such action for damages was brought without substantial justification, the court may award costs and reasonable attorney's fees to the employer.

Conn. Gen. Stat. § 31-51q.

[5] In determining whether the employee's speech addresses a matter of public concern, federal First Amendment law is informative. *See Bracey v. Bd. of Educ. of City of Bridgeport,* 368 F.3d 108, 116 (2d Cir. 2004) ("Courts construing section 31–51q consistently look to federal First Amendment law to determine whether section 31–51q gives rise to a cause of action.").

*DiMartino v. Richens*, 263 Conn. 639, 667 (2003) (quoting *Connick v. Myers* 461 U.S. 138, 150 (1983)); *see also City of San Diego, Cal. v. Roe,* 543 U.S. 77, 83–84 (2004) ("[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication."). The critical question is whether the employee's speech was calculated to redress personal grievances or whether it had a broader public purpose. *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008); *see also Cappiello v. Fitzsimmons*, No. CV030478253S, 2005 WL 2009569, at *5 (Conn. Super. Ct. Aug. 3, 2005) (Section "31-51q applies to situations where the employee is motivated to champion the rights of others as a concerned citizen rather than airing a personal grievance.")). It is a court's responsibility to determine, as a matter of law, which topics are considered to be of public concern. *Daley,* 249 Conn. at 782; *see also Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211 (2d Cir. 2002) ("The issue of whether the plaintiff has asserted a violation of a constitutional right at all is a purely legal question.") (internal quotation marks omitted). But, it is within the province of the jury to determine whether an employee's statements address such a topic by "looking to the content, form and context of the particular statements in question." *Daley v. Aetna Life & Cas. Co.,* 249 Conn. 766, 782 (1999) (citing *Connick*, 461 U.S. at 147-48).

Defendant argues that Plaintiff cannot meet the threshold "public concern" requirement of Section 31-51q because his claims are "clearly personal in nature, arising from a single, isolated event purportedly occurring in YNHH's operating room on June 5, 2014" and therefore that Plaintiff's Count Four must be dismissed. Plaintiff, however, contends that his "memorandum expressing safety concerns constitutes an exercise of free expression guaranteed by the First Amendment to the United States Constitution and Sections 3, 4 and 14 of Article First of the Constitution of the State of Connecticut." (Am. Compl. ¶ 33.) Therefore, the question posed by

this motion to dismiss is whether, as a matter of law, Plaintiff's speech as alleged in the Complaint plausibly relates to a topic of public concern protected by Section 31-51q.[6]

### B.  Plaintiff's Complaint Alleges Only a Single Isolated Workplace Incident

Plaintiff claims his speech is protected because it pertained both to employee and patient safety, both of which he asserts are topics of public concern. Defendant recognizes that in some circumstances patient and employee safety in a hospital may be a matter of public concern,[7] but argues that in this case, Plaintiff's speech was purely personal in nature because his Complaint "details [only] a single encounter on June 5, 2014 during which Dr. Derek Steinbacher supposedly 'elbowed' and 'jabbed' [Plaintiff] in the operating room." (Def.'s Reply at 2.) The focus of Defendant's Motion to Dismiss then, is on the personal nature of the speech, which Defendant posits cannot "fairly [be] considered as relating to any matter of political, social or other concern to the community.'" *DiMartino*, 263 Conn. at 667 (citing *Connick*, 461 U.S. at 150).

---

[6] The parties agree that Plaintiff's motivation for speaking is a factual matter within the province of the jury and therefore is not appropriate for determination on a motion to dismiss. *See Daley*, 249 Conn. at 778 ("motivation is a quintessential issue of fact.").

[7] *See e.g.*, *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) (Pointing to the Occupational Safety and Health Act of 1970 (OSHA) and similar state laws as recognition "that safety in the workplace is a matter of public concern."); *Schumann v. Dianon Sys., Inc.*, 304 Conn. 585, 623 (2012) (dictum) ([P]atient safety . . . is topically a matter of public concern) (internal quotation marks and citations omitted); *Carlson v. Sheriden Woods Health Care Ctr., Inc.*, No. HHDCV116025384S, 2012 WL 753756, at *4 (Conn. Super. Ct. Feb. 14, 2012) ("Construing the plaintiff's alleged actions to focus on the matter of patient safety, there is little question that the matter is of public concern"); *Kahn v. Connecticut Dep't of Mental Health & Addiction Servs.*, No. FSTCV095010654, 2011 WL 3278534, at *4 (Conn. Super. Ct. July 7, 2011) ("[T]he plaintiff here is expressing concerns about inadequate care that the patients are receiving, as well as concerns about the safety of patients and staff . . . speech regarding these types of issues are related to political and social concerns in the community and therefore the speech at issue can be considered speech on matters of public concern.").

Plaintiff's claimed protected speech is his June 10 memorandum to Defendant's management in which he states "I understand that the Hospital may lose money if a surgeon has to be put on leave or dismissed but the patients['] safety and that of employees who work at this Hospital should supersede that" (Am. Compl. ¶ 30.) The basis for the alleged safety concern is that the Doctor's conduct during the incident "caused a disruption in the Operating Room, an unnecessary change in staffing and placed the patient's safety and well-being at risk" (Am. Compl. ¶ 20), and "there were concerns regarding his anger and inappropriate behavior in other contexts" such as instances of his having "verbally assaulted and threatened other minority workers" (Am. Compl. ¶ 19).

Defendant maintains that Plaintiff's allegations of other related conduct in Paragraph 19 are conclusory assertions that are "(i) insufficient to defeat a motion to dismiss . . . and (ii) completely devoid of specifics, making their purported connection to [Plaintiff's] complaint or some other matter of political, social, or other concern to the community nothing more than rank speculation." (Def.'s Mot. to Dismiss at 6) (internal citations and quotation marks omitted.)

The Court agrees. Plaintiff's allegations of verbal assaults against other co-workers lack any factual detail that would implicate patient or employee safety, and similarly the vague allegation that the Doctor behaved inappropriately in other contexts, without any facts describing this behavior and connecting it to the endangerment of patients or other employees, is no more than a conclusory allegation. *See Milardo v. Town of Westbrook*, 120 F. Supp. at 217 ("[A] plaintiff with a purely personal grievance against her employer cannot transform her suit into one affecting the public interest simply by adorning her complaint with conclusory allegations of widespread misconduct or systemic abuses."); *Heusser v. Hale*, 777 F. Supp. 2d 366, 381 (D. Conn. 2011) ("These accusatory allegations are entirely conclusory. There are no specific or wellpleaded factual

7

allegations regarding a practice or history or discriminatory treatment of the other individuals.") Therefore, the Court concludes that because Plaintiff's Complaint is devoid of any specifics supporting a link between the Doctor's other alleged verbal assaults or inappropriate behavior and any topic of public concern, the only possible basis for claiming protection under Section 31-51q is the single June 5 incident where Plaintiff alleges he was intentionally elbowed and jabbed several times by the Doctor.

### C.  Plaintiff's Speech Does not Relate to a Matter of Public Concern

The question then becomes whether this single workplace encounter constitutes a matter of public concern. Plaintiff's Opposition argues "the safety of a hospital [is a] matter[] of concern for every member of the public who may be a patient there" and therefore Plaintiff's "comments to Defendant were within the context of a matter of general public concern." (Pl.'s Opp'n at 9). However, such reasoning could render every dispute about conditions in a hospital a constitutional question. *See Cotto,* 251 Conn. at 17 (Warning that "a statute that protects constitutional rights in the workplace should not be construed so as to transform every dispute about working conditions into a constitutional question."). Instead, the Court is counseled to examine whether the speech had a broader public purpose or merely addressed a personal grievance. *See Ruotolo*, 514 F.3d at 189.[8]

---

[8] In general, "a lawsuit is more likely to implicate a matter of public concern if it addresses pervasive or systemic misconduct by [the employer] than if it alleges isolated instances of misfeasance." *Milardo v. Town of Westbrook*, 120 F. Supp. 3d 206, 217 (D. Conn. 2015) (internal quotation marks omitted); *see also Heusser v. Hale*, 777 F. Supp. 2d 366, 389 (D. Conn. 2011) (Plaintiffs' complaint does "not [describe] a pattern or practice of discriminatory terminations or police misconduct [and so] involves only matters of personal interest and sets forth no facts or circumstances to implicate any political, social, or other concern to the community"; *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) ("[H]ad [the plaintiff's] complaints to her

Plaintiff argues the facts here are analogous to those in *Munafo*, where the plaintiff public transit worker complained about safety problems with public transportation trains, including employees being required to operate trains without brakes, work without respiratory equipment, and operate in dangerous proximity to a live third rail. 285 F.3d at 212. The court determined that the worker's complaints pertained to ongoing, pervasive and system-wide safety issues impacting employees and public transit riders alike on a daily basis and therefore amounted to more than personal grievances. *Id.* at 212-13. It is difficult to see how Plaintiff's Complaint could be read to allege facts of this nature, given its clear focus on a single workplace incident essentially involving one doctor and Plaintiff.

Plaintiff's reliance on *DiMarco v. Rome Hospital & Murphy Hospital* is equally unavailing. No. 88-CV-1258, 1991 WL 336000 (N.D.N.Y. July 1, 1991). There, a plaintiff doctor complained to the hospital, and later the New York State Department of Health, about the competency of the individuals responsible for the overall management of the hospital, certain of the hospital's general practices, and the conduct and judgment of other doctors and the nursing staff. *Id.* at *1. The court held that based upon the overall record on summary judgment, the plaintiff's speech related to matters of public concern because he "continually expressed his concern for his patients' well-being and for the general workings of the [h]ospital" and because "overall, it [did] not appear that [the plaintiff's] complaints were based on his personal dissatisfaction, but were instead because of his concern as a professional." *Id.* at *8. Like *Munafo*, *DiMarco* is clearly distinguishable because Plaintiff in this case has identified no pattern or practice addressed by his speech that would

---

supervisors implicated system-wide discrimination they would have unquestionably involved a matter of public concern.") (internal quotation marks omitted).

9

constitute a matter of public concern and Plaintiff had a clear personal stake in complaining to Defendant about the Doctor.[9]

The Court finds the allegations of this case more in line with those cited by Defendant where the courts determined that the plaintiffs' speech related to purely personal complaints. For instance, the Second Circuit affirmed a district court's determination that a state correctional facility nurse's speech focused on her own work situation where she complained that white employees with less seniority were promoted over her and received better treatment, despite the fact that she also specifically complained about forced overtime and under-staffing, both of which the Second Circuit noted might implicate concerns for staff and patient safety in another context. *Norton v. Breslin*, 565 F. App'x 31, 34-35 (2d Cir. 2014). Plaintiff admits he was at least in part "lamenting his personal situation after [the Doctor's] assault," (Pl.'s Opp'n at 9) which resembles the *Norton* plaintiff's acknowledgment in her brief that she was partially concerned for her own well-being when she complained of over-staffing. *See id.* at 35. The Second Circuit found that the plaintiff's race-based claims were "a quintessential employee grievance" not protected by the First Amendment. *Id.* at 34.

In *Markese v. Manafort Brothers*, the plaintiff jackhammer operator complained of constant exposure to hazardous breathing conditions on a road repair project due to an excess of

---

[9] The Court recognizes that even though Plaintiff's speech was at least in part related to his own personal grievance, that does not foreclose it also addressing a matter of public concern. *See Sousa v. Roque*, 578 F.3d 164, 174-75 ("[I]t does not follow that a person *motivated by* a personal grievance cannot be speaking on a matter of public concern.") (emphasis in original). However, given the paucity of facts pled, the Court finds that Plaintiff's Complaint fails to adequately allege any topic of public concern, and as discussed in further detail below, amounted only to a personal workplace grievance.

concrete dust being produced by the jackhammers excavating the road beds. No. HHDCV116022852, 2012 WL 3264033, at *1 (Conn. Super. Ct. July 17, 2012). The defendant argued the plaintiff's Section 31-51q claim must be dismissed because his allegations of an unsafe workplace related to his job duties and not a topic of public concern, which the plaintiff attempted to rebut by arguing that because his speech contemplated illegal or dangerous activities by his employer it therefore plainly related to a matter of public concern. *Id.* at *3. The court agreed with the defendant, determining that the allegations in the complaint did "not concern anyone other than the plaintiff and his working conditions" and holding that his "comments about workplace safety and illegality . . . cannot be read as expressions regarding public concerns that were motivated by the plaintiff's desire to speak out as a citizen." *Id.* at 4. Thus, the *Markese* Court rejected the suggestion that any complaint relating to workplace safety implicates a matter of public concern. *Id.*[10]

These cases, along with *Cotto*'s caution to be mindful of the risk of transforming every dispute about conditions of employment in a hospital into a constitutional question, guide this Court's analysis. *See* 251 Conn. at 17. Here, looking at the Complaint as a whole, Plaintiff's focus in writing his June 10 memo was the conditions of his own work environment, an obviously personal matter. Although one line in his memo to Defendant claims concern for patient and

---

[10] Defendant also maintains that the personalized nature of the relief sought by Plaintiff's lawsuit is indicative of the fact that his speech does not address a matter of public concern. (Def.'s Reply at 6-8 (citing *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) ("[b]ecause Ruotolo's lawsuit concerns essentially personal grievances and the relief he seeks is for himself alone, the lawsuit is not speech on a matter of public concern."))). Here, however, Plaintiff contends his complaints to Defendant are what constitute the protected speech which triggered Defendant's retaliatory conduct, not this lawsuit for redress, and the fact that the relief he seeks is personal in nature should not determine the nature of the underlying speech.

employee safety, this alone does not automatically require finding that Plaintiff's speech is constitutionally protected. Unlike in *Munafo* and *DiMarco*, any purported concern for employee or patient safety was based entirely on one incident that potentially endangered only Plaintiff himself and the young patient in the operating room. Moreover, Plaintiff was admittedly "deeply concerned by [the Doctor's] conduct and the disruption it caused in the Operating Room" (Am. Compl. ¶ 20), which resulted in his taking a leave of absence because he was not comfortable continuing to work with the Doctor after the incident (*Id.* ¶ 24). Thus, Plaintiff's Complaint alleges a "quintessential employee grievance" stemming from the Doctor's conduct in the operating room on June 5. *See Norton*, 565 F. App'x at 34.

The Court concludes that even taking Plaintiff's factual allegations as true, his Complaint alleges only an isolated workplace encounter that is not a "subject of legitimate news interest." *See City of San Diego, Cal.,* 543 U.S. at 83–84. Consequently, Plaintiff fails to meet the threshold pubic concern requirement for protected speech under Section 31-51q and his claim must be dismissed.

## III.   Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss Count Four is granted.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of March 2017.